**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**JONATHAN MIODUSZEWSKI,**

**Plaintiff,**

**v.** **Case No. 2:25-CV-00891-SCD**

**FRANK J. BISIGNANO,**
***Commissioner of Social Security,***

**Defendant.**

---

## DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION

---

Jonathan Mioduszewski seeks Social Security benefits based primarily on fibromyalgia and degenerative disc disease of his neck and lower back. After a hearing, an administrative law judge denied the claim for benefits, finding that Mioduszewski could still perform a limited range of light work. Mioduszewski seeks judicial review of that decision under Section 205(g) of the Social Security Act. He argues that the ALJ erred in evaluating the medical opinions, formulating his RFC, and assessing his subjective symptoms. Because the ALJ applied the correct legal standards and substantial evidence supports his decision, I affirm the Commissioner's decision and deny Mioduszewski's request for remand.

## BACKGROUND

In 2023, Mioduszewski applied for disability insurance benefits under Title II of the Social Security Act. He alleged that fibromyalgia and neck and back problems had kept him from working since June 2021.

## I. Personal and Medical History

Mioduszewski was 32 years old when he alleged his disability began in June 2021. Before then, he had worked in information technology. *See* R. 26, 236.[1]

Mioduszewski has a longstanding history of fibromyalgia and chronic pain. His pain-management physician assistant, Sara Stoddard, reported treating him about every three months since 2015. R. 472. Her treatment records document fibromyalgia, lower back pain, and lumbar disc bulge. *See* R. 312, 317, 324. Across that treatment history, his examinations reflected both abnormal and largely normal findings.

The abnormal findings principally reflected pain, tenderness, and weakness. Mioduszewski reported chronic diffuse pain, worsening lower back pain, and numbness and tingling in his legs. *See* R. 305, 337. He had tenderness in his upper trapezius, thoracolumbar paraspinals, trochanteric bursae, and IT bands. *See* R. 307, 313, 320, 326, 338. His cervical and thoracolumbar ranges of motion and scapulohumeral rhythm were generally full but painful. *See* R. 313, 320, 326, 331–32. Several examinations also noted distal giveaway weakness. *Id.*

Other examination findings were mostly normal. Mioduszewski often appeared in no apparent distress, sat comfortably, rose from sitting without assistance, and walked with a non-antalgic gait. *See* R. 299, 307–08, 313, 320, 326, 338. He generally remained neurologically intact apart from the giveaway weakness. *See* R. 313, 320, 326, 331–32. Examinations also showed normal muscle bulk and tone, full strength, intact sensation, and symmetric reflexes. *See* R. 307–08.

[1] The transcript is filed on the docket at ECF No. 10.

Imaging revealed abnormalities in Mioduszewski's spine. A cervical MRI showed very mild disc bulges without central canal or foraminal narrowing. *See* R. 299, 312. A February 2021 lumbar MRI showed mild diffuse disc bulging, including a shallow central disc protrusion at L4–5. *See* R. 373–74. November 2020 x-rays showed mild narrowing at L5–S1 and no other significant abnormalities. R. 377.

Mioduszewski treated his fibromyalgia and chronic pain with medication and physical therapy. Although his providers described his fibromyalgia as refractory, their notes also repeatedly stated that he showed "significant functional and symptomatic benefit from current treatment." *See* R. 300, 308, 314, 320, 326, 332.

Shortly before Mioduszewski's alleged onset date, Stoddard assessed his work-related limitations. *See* R. 472–74. According to Stoddard, Mioduszewski could sit for sixty minutes and stand for fifteen minutes at a time. *Id.* Over an eight-hour workday, he could sit for about four hours and stand or walk for about two hours. R. 473. She noted that he needed to change positions at will and would require an unscheduled ten-minute break about every two hours. *Id.* She also imposed lifting, postural, reaching, handling, and fingering limitations. *See* R. 473–74. Stoddard believed Mioduszewski would have good and bad days and miss about two days of work each month. R. 474. Mioduszewski's treating physician, Dr. Robert Zoeller, agreed with Stoddard's assessment. R. 476.

## II. Administrative Proceedings

The state agency denied Mioduszewski's application initially and on reconsideration. *See* R. 81–86, 97–115. Two state-agency physicians assessed Mioduszewski's ability to work. The first physician found that Mioduszewski could perform medium work. R. 79. She found he could lift fifty pounds occasionally and twenty-five pounds frequently. R. 78. She also

found he could sit, stand, or walk for about six hours each during an eight-hour workday. *Id.* The second physician made largely the same findings. *See* R. 85–86.

After the state-agency denial, Mioduszewski appeared before an ALJ. *See* R. 32–65. He testified that his fibromyalgia was unpredictable, with flare-ups that produced bad days. *See* R. 40–44, 55–57. According to Mioduszewski, on his bad days he stayed in bed, had difficulty walking and caring for himself, and sometimes needed help reaching the bathroom. *See* R. 41–42. He estimated he had about two flare-ups per week and that a flare-up could last multiple days. *Id.*

Mioduszewski also described how his symptoms affected his daily activities. On better days, he sometimes helped with cooking or light household tasks and took his dogs for short walks in the yard. *See* R. 51, 56. He also occasionally visited friends and participated in family board games. *See* R. 51. He testified that although he had driven to appointments, doing so had become increasingly difficult. *See* R. 49–50.

The ALJ found Mioduszewski not disabled and denied his claim for benefits. *See* R. 16–28. Applying the five-step evaluation process, the ALJ found Mioduszewski had two severe impairments: fibromyalgia and degenerative disc disease of the cervical and lumbar spine. R. 18. Neither impairment, however, met or equaled a listed impairment, which would have required a finding of disability at step three. *See* R. 19–20; 20 C.F.R. §§ 404.1520(d), 404.1525.

Between steps three and four, the ALJ assessed Mioduszewski's residual functional capacity (the most he could do despite his limitations). *See* R. 20–26. The ALJ found that Mioduszewski could perform light work with additional postural and environmental restrictions. *See* R. 20–21.

The ALJ considered Mioduszewski's reported symptoms and the medical evidence. *See* R. 21–26. The ALJ acknowledged Mioduszewski's reports of pain, flare-ups, and good and bad days, as well as examination findings of tenderness, painful range of motion, and distal giveaway weakness. *See* R. 21–23. Even so, he concluded that Mioduszewski's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the record. R. 23. In support, the ALJ pointed to spinal imaging showing generally mild abnormalities and examinations reflecting normal strength, sensation, and gait and largely intact neurological functioning. *See* R. 23–24. He also relied on Mioduszewski's treatment history, noting repeated reports that treatment provided significant functional and symptomatic benefit. *See* R. 23–24. Taken together, the examination and imaging findings, along with Mioduszewski's treatment history, did not support the degree of limitation he and his pain-management team described. R. 24.

The ALJ also evaluated the medical opinion evidence. He found the state-agency physicians' medium-work assessments partially persuasive. R. 24. He nevertheless concluded that light work "better accommodate[d]" Mioduszewski's pain complaints and examination findings of tenderness and discomfort with range of motion. *Id.*

Next, the ALJ found Stoddard's and Dr. Zoeller's 2021 opinion not persuasive. R. 25–26. He reasoned that their treatment notes did not support the limitations they assessed and that those limitations were inconsistent with other diagnostic and clinical evidence. *See* R. 25. In particular, he cited examinations showing no distress; an ability to sit comfortably and rise independently; a normal gait and generally good strength; mild imaging findings; and reports that Mioduszewski benefited from treatment. *Id.*

At step four, the ALJ found that Mioduszewski had no past relevant work. R. 26. At step five, relying on the vocational-expert testimony, the ALJ concluded that Mioduszewski could perform other work. The ALJ therefore concluded that Mioduszewski had not been disabled between his alleged onset date of June 1, 2021, and his date last insured of December 31, 2021. R. 28.

The Social Security Administration's Appeals Council denied Mioduszewski's request for review, making the ALJ's decision final. R. 1–6. This action followed.

## LEGAL STANDARD

Section 405(g) governs judicial review of the Commissioner's decision under the Social Security Act. Federal courts may affirm, modify, or reverse the Commissioner's decision. A court reverses "only if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020) (citing *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)).

The review is deferential. "Substantial evidence is not a demanding requirement. It means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Martin*, 950 F.3d at 373 (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)). The court must thus determine whether the ALJ built an "accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014). Consistent with that limited role, the court does not reweigh conflicting medical evidence or decide for itself which opinion is most persuasive. *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001).

## DISCUSSION

Mioduszewski seeks remand and raises three principal challenges. First, he contends the ALJ failed to adequately explain why he found Mioduszewski's treating providers' opinions unpersuasive. Second, Mioduszewski argues that the ALJ did not adequately explain how the evidence supports the limitations in the RFC or accounts for the fluctuating nature of his fibromyalgia symptoms. Third, Mioduszewski maintains that the ALJ inadequately evaluated his subjective reports of pain.

### I. The ALJ Adequately Explained His Evaluation of Mioduszewski's Treating Providers' Opinions

Mioduszewski first argues that the ALJ did not adequately explain why he found Stoddard's and Dr. Zoeller's opinions unpersuasive. According to Mioduszewski, the ALJ identified both normal and abnormal findings but never explained how he weighed that competing evidence. Nor did he explain why the normal findings undermined the limitations Mioduszewski's treating providers assessed. He also argues that the ALJ improperly relied on mild imaging findings and reported improvement with treatment without explaining how either was inconsistent with limitations attributed mostly to fibromyalgia. In his view, the ALJ therefore failed to explain his analysis of supportability and consistency as required by 20 C.F.R. § 404.1520c.

The ALJ evaluates medical opinions using five factors: supportability, consistency, the source's relationship with the claimant, specialization, and other relevant considerations. *See* 20 C.F.R. § 404.1520c(c). Supportability and consistency are the most important factors. 20 C.F.R. § 404.1520c(a), (b)(2). The supportability factor asks how well the medical source supports the opinion with objective evidence and explanation. *See* 20 C.F.R. § 404.1520c(c)(1). The consistency factor asks how well the opinion accords with other medical and nonmedical

evidence in the record. *See* 20 C.F.R. § 404.1520c(c)(2). The ALJ must explain in his decision how he considered the supportability and consistency factors for each medical opinion and prior administrative medical finding in the record. 20 C.F.R. § 404.1520c(b)(2). The ALJ may, but need not, explain how he considered the other three factors. 20 C.F.R. § 404.1520c.

The ALJ here adequately explained why he found Stoddard's and Dr. Zoeller's opinions unpersuasive. He acknowledged that they had treated Mioduszewski for fibromyalgia over time and that Stoddard "did cite examination findings in support of [her] assessment." R. 25. He still concluded that their own treatment records did not support the limitations they assessed, finding the limits inconsistent with the record. *Id.* The ALJ adequately addressed both supportability and consistency by comparing the providers' opinions with their own treatment records and with the other evidence in the record.

The ALJ addressed supportability by examining whether the limitations Stoddard and Dr. Zoeller assessed were supported by their own treatment notes. He observed that those records frequently reflected that Mioduszewski appeared in no distress, sat comfortably during examinations, independently rose from sitting to standing, and walked with an unaided, nonantalgic gait. R. 25. These were relevant to whether the providers' treatment records supported the substantial limitations they assessed.

The ALJ addressed consistency by identifying evidence that cut against the extent of the providers' restrictions, such as generally mild abnormalities on spinal imaging and an essentially unremarkable primary-care examination. He also identified clinical findings that were seemingly inconsistent with the extent of the providers' postural and upper-extremity restrictions. Mioduszewski generally had full (though painful) range of motion, normal muscle bulk and tone, and good strength and reported benefit from treatment. *Id.* Thus, the

ALJ did more than label the opinions unsupported or inconsistent; he identified the evidence informing those conclusions.

Mioduszewski responds that this explanation still does not show *how* the ALJ weighed the abnormal findings against the normal findings. That is not so. The ALJ discussed tenderness, painful range of motion, and giveaway weakness earlier in the RFC analysis and acknowledged the examination findings Stoddard cited in support of her assessment. R. 22–23, 25. Indeed, the ALJ credited those abnormalities to some extent: he found the state-agency physicians' medium-work assessments insufficiently restrictive. He explained that light work "better accommodate[d]" Mioduszewski's pain complaints, tenderness to palpation, and painful range of motion. R. 24. The ALJ therefore considered evidence pointing in both directions. Section 404.1520c does not require the ALJ to assign comparative weight to each normal and abnormal finding. I need only trace why the ALJ concluded that the abnormalities did not warrant the greater restrictions proposed by Stoddard and Dr. Zoeller. *See Thorlton v. King*, 127 F.4th 1078, 1083 (7th Cir. 2025). That path is clear here: the ALJ credited Mioduszewski's pain, tenderness, and painful range of motion by reducing him to light work, but found the greater restrictions unsupported in light of the otherwise largely normal examinations and reported benefit from treatment.

Mioduszewski's more specific objection to the ALJ's reliance on spinal imaging has some force, but it does not require remand. It's true that relatively mild cervical and lumbar imaging cannot, by itself, demonstrate that fibromyalgia caused only modest functional limitations. *See Akin v. Berryhill*, 887 F.3d 314, 318 (7th Cir. 2018) (explaining that fibromyalgia "cannot be evaluated or ruled out by using objective tests" and that the absence of objective medical evidence alone cannot support discounting alleged pain and limitations). But the ALJ

did not use the imaging that way. He found fibromyalgia to be a severe impairment, acknowledged Mioduszewski's tenderness and painful range of motion, and relied on *those* findings to impose greater restrictions than the state-agency physicians recommended. *See* R. 24. The ALJ considered the imaging together with the treatment examinations, primary-care findings, strength, muscle bulk and tone, range of motion, gait, and treatment response. R. 25. Read fairly, the ALJ treated the imaging as just one part of his supportability and consistency analysis, not as evidence that the fibromyalgia was mild.

Mioduszewski also challenges the ALJ's reliance on his positive response to treatment, but the ALJ adequately explained that consideration as well. The treatment records from Stoddard and Dr. Zoeller repeatedly stated that Mioduszewski experienced "significant functional and symptomatic benefit from current treatment." R. 25; *see* R. 300, 308, 314, 320, 326, 332, 339, 347, 354, 361, 513, 520, 529. Mioduszewski calls that language boilerplate tied to continued opioid prescribing and argues that the providers never quantified *how* much he improved.

But the ALJ did not have to ignore repeated statements in the providers' own treatment records describing both functional and symptomatic benefit. The providers' repeated reports of functional and symptomatic benefit were relevant to the supportability of their opinions. The ALJ did not reason that improvement from treatment, standing alone, established that Mioduszewski was able to work. He explained that the treatment benefits, "read in combination with" the examination and diagnostic findings, undermined particular limitations assessed by Stoddard and Dr. Zoeller. R. 25.

Mioduszewski's reliance on *Murphy v. Colvin* does not require a different result. *See* 759 F.3d 811, 819 (7th Cir. 2014) ("The key is not whether one has improved . . . but whether they

have improved enough to meet the legal criteria of not being classified as disabled."). The ALJ did not infer from Mioduszewski's improvement that he could perform light work. Rather, he considered the providers' reports of functional benefit together with examination and diagnostic findings in deciding whether their own records supported the restrictions they assessed. *Murphy* does not prohibit an ALJ from considering treatment response for that narrower purpose. *Id.* Whether that evidence ultimately deserved less weight than the providers' contrary evidence presents a question of evidentiary weight, not an inadequacy in the ALJ's explanation. Accordingly, Mioduszewski has not shown reversible error in the ALJ's evaluation of Stoddard's and Dr. Zoeller's opinions.

## II. The ALJ Adequately Explained an RFC Assessment Supported by Substantial Evidence

Mioduszewski next argues that the ALJ failed to explain how the record adequately supported the RFC limitations. He does not contend that the ALJ needed to adopt any medical opinion. Mioduszewski's argument is narrower. He maintains that, once the ALJ found the state-agency physicians' medium-work assessments insufficiently restrictive and the treating providers' assessments too restrictive, the ALJ could not simply choose a middle ground. Instead, according to Mioduszewski, the ALJ had to identify specific evidence supporting the light-work limitation and explain how that evidence translated into the RFC restrictions. Mioduszewski also argues that the ALJ failed to address whether his reported fibromyalgia flares and good and bad days would cause additional functional limitations or work absences. I take each argument in turn.

Mioduszewski is correct that the ALJ must support the RFC with record evidence. Yet an ALJ need not adopt any medical opinion wholesale. *See Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). And the ALJ did not split the difference here. Rather, the ALJ found the

state-agency physicians' medium-work assessments partially persuasive. He concluded that their assessments supported at least light work because they reflected the diagnostic studies, examinations, and benefit from treatment. *See* R. 24.

The ALJ then identified the clinical findings that, in his view, supported at least light work: generally mild imaging, largely normal examination findings, and reported treatment benefit. R. 24. At the same time, the ALJ concluded that the state-agency physicians had not adequately accounted for Mioduszewski's pain, tenderness, and painful range of motion. *Id.* He therefore reduced Mioduszewski from medium to light work and imposed additional restrictions.

Read together, that reasoning supplies a discernible path to the RFC. The ALJ's finding that the state-agency assessments were only partially persuasive does not remove them from the evidentiary picture. The ALJ expressly found them persuasive "insofar as their findings reflect an ability to sustain a range of light exertional work." R. 24. That conclusion makes sense because an assessment of medium-work capacity necessarily encompasses the lesser exertional demands of light work. *See* 20 C.F.R. § 404.1567(c) ("If someone can do medium work, we determine that he or she can also do sedentary and light work."). The pain, tenderness, and painful motion, in turn, explain why the ALJ stopped short of the state-agency physicians' medium-work assessments. He relied on those assessments and the generally favorable clinical findings as evidence that Mioduszewski retained greater capacity than Stoddard and Dr. Zoeller assessed, while crediting Stoddard's abnormal findings enough to impose additional restrictions. The ALJ therefore did not select the light-work RFC merely because it fell between competing opinions. He grounded it in record evidence supporting at least light work and then imposed additional restrictions to account for Mioduszewski's pain

and abnormal findings. The ALJ could have been more specific. Yet substantial-evidence review does not require a high degree of specificity. ALJs are subject to "only the most minimal of articulation requirements." *Thorlton*, 127 F.4th at 1083 (quoting *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024)). The ALJ met that requirement here by pointing to the mild imaging, largely normal examination findings, and treatment benefit and explaining why those findings supported the restricted range of light work he assessed.

The ALJ also did not reject all the medical opinion evidence: he found the state-agency physicians' assessments partially persuasive. Mioduszewski cites cases that require a medical expert where the ALJ is left with a "complete absence of valid expert opinions." *See Wood v. Kijakazi*, No. 22-CV-627, 2023 WL 1108714, at *4, 2023 U.S. Dist. LEXIS 14956 (E.D. Wis. Jan. 30, 2023). That is not this record. The ALJ did not reject every opinion. He found the state-agency assessments partially persuasive and relied on them as evidence that Mioduszewski retained at least light-work capacity. R. 24. Because a valid expert opinion informed the RFC, no evidentiary void obligated the ALJ to develop the record further.

Mioduszewski's remaining RFC argument concerns the fluctuating nature of his fibromyalgia. He testified that he experienced about two flare-ups each week and that flares could last multiple days. He also testified that, during 2021, he averaged about two bad days per week and stayed in bed on those days. *See* R. 41–42, 55, 57. According to Mioduszewski, the ALJ acknowledged that testimony but never decided whether those bad days could cause additional functional limitations or work absences. Mioduszewski insists that omission was material, as Stoddard and Dr. Zoeller opined that Mioduszewski would miss about two

workdays each month. The vocational expert testified that missing even one day of work every other month would preclude employment. R. 61.

Mioduszewski argues that the ALJ failed to account for recurrent fibromyalgia flares that, if credited at the frequency and severity he alleged, would prevent sustained work. An ALJ need not discuss every piece of evidence in the record, but she may not ignore an entire line of evidence either. *See Warnell*, 97 F.4th at 1053–54; *Arnett v. Astrue*, 676 F.3d 586, 592–93 (7th Cir. 2012); *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (explaining that an ALJ "need not provide a complete written evaluation of every piece of testimony and evidence" (cleaned up)). The relevant evidence here is not that Mioduszewski experienced "good days and bad days." It is that recurrent fibromyalgia flares occurred with sufficient frequency and severity to prevent sustained work.

An ALJ is not required to separately determine the functional consequences of every alleged good or bad day. Mioduszewski relies on *Swiecichowski v. Dudek* for the proposition that an ALJ assessing fibromyalgia must consider that symptoms wax and wane, producing good and bad days. 133 F.4th 751 (7th Cir. 2025) (remanding because the ALJ relied on a handful of comparatively favorable examinations while overlooking the longitudinal record documenting fluctuating fibromyalgia symptoms). Mioduszewski reads *Swiecichowski* to require the ALJ to decide whether bad days create additional limitations or absences separately. *See* Pl.'s Br. at 13 ("The ALJ was required to evaluate that evidence and include limits to account for Plaintiff's bad days, or, if not, explain the omission."); Pl.'s Reply Br. at 7 ("The ALJ did not indicate if he credited fluctuating symptoms or whether he found that

due to bad days or flares in symptoms, Plaintiff would be absent from work."); ECF No. 13, 23.

But *Swiecichowski* does not go that far. *Swiecichowski* requires the ALJ to evaluate fibromyalgia longitudinally, recognizing that its symptoms may wax and wane. An ALJ therefore cannot treat variation among individual examinations as necessarily undermining reported pain. *Swiecichowski*, 133 F.4th at 758–59. In *Swiecichowski*, the ALJ relied on a handful of medical visits but overlooked a much larger body of treatment records documenting limiting pain. *Id.* The problem was selective review, not merely a failure to discuss good and bad days.

The selective-review problem identified in *Swiecichowski* is not present here. The ALJ recounted Mioduszewski's testimony that fibromyalgia was unpredictable, he experienced two flare-ups per week, the flares sometimes lasted several days, and on bad days he stayed in bed. The ALJ also considered records spanning 2020 through early 2022 showing that Mioduszewski could be bedridden during flare-ups and experienced good and bad days. Unlike the ALJ in *Swiecichowski*, the ALJ here expressly acknowledged Mioduszewski's reported flare-ups and good and bad days.

Although the ALJ could have stated that conclusion more explicitly, his explanation satisfies the minimal-articulation requirement. Read as a whole, the ALJ's decision shows that he recognized Mioduszewski's fluctuating symptoms but did not credit their alleged frequency and severity to a work-preclusive degree.

## III. The ALJ's Evaluation of Mioduszewski's Subjective Symptoms Is Not Patently Wrong

Finally, Mioduszewski argues that the ALJ inadequately evaluated his statements concerning the intensity, persistence, and limiting effects of his symptoms. He contends that

the ALJ relied too heavily on normal objective findings that did not bear on the severity of fibromyalgia. He also challenges the ALJ's reliance on conservative treatment and improvement with medication. Mioduszewski therefore maintains that the ALJ's symptom evaluation lacked the explanation required by 20 C.F.R. § 404.1529 and SSR 16-3p.

An ALJ may not reject a claimant's symptom allegations merely because the objective evidence does not support the alleged severity. She may, however, consider objective findings together with treatment, treatment effectiveness, and other record evidence. *See* 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). The ALJ need not expressly discuss every regulatory factor in detail, and the court overturns an ALJ's symptom evaluation only if it is "patently wrong." *Grotts v. Kijakazi*, 27 F.4th 1273, 1278–79 (7th Cir. 2022). A symptom evaluation is patently wrong when it lacks explanation or support. *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). Thus, the question is not whether the court would have assessed Mioduszewski's symptoms differently, but whether the ALJ gave reasons grounded in the record and logically based on specific findings and evidence. *See id.* (A "determination lacks support when it relies on inferences that are not logically based on specific findings and evidence.").

The ALJ here did not reject Mioduszewski's allegations merely because his pain lacked objective corroboration. He accepted that Mioduszewski's impairments caused "symptoms and limitations" but found the evidence inconsistent with the limitations alleged. R. 24. Consistent with that finding, the ALJ declined to fully adopt the state-agency physicians' medium-work assessments and limited Mioduszewski to light work in part to accommodate his "subjective complaints of pain." *Id.* Thus, the ALJ credited Mioduszewski's pain but did not accept his account of its disabling severity.

Nor did the ALJ impermissibly rely on examination findings unrelated to fibromyalgia. Mioduszewski correctly argues that normal strength, reflexes, sensation, and similar findings do not necessarily reveal the severity of fibromyalgia pain. *See Swiecichowski*, 133 F.4th at 758 (explaining that fibromyalgia "results in few physical manifestations" and citing authority recognizing that patients may have normal muscle strength, sensory function, reflexes, and joints). *Swiecichowski* nevertheless recognizes that clinical findings remain relevant insofar as they reveal a claimant's ability to "walk, move, and generally function." 133 F.4th at 758–59. That distinction matters here because Mioduszewski alleged difficulty walking, falls and balance problems, reliance on a cane, and periods when he could barely get out of bed. The ALJ therefore could and did consider findings that he rose and walked independently, moved with a nonantalgic gait, performed deep knee bends, and had a negative Romberg test, meaning he maintained his balance while standing with his feet together and his eyes closed. R. 23–24.

The ALJ also permissibly considered Mioduszewski's treatment response when evaluating the alleged severity of his symptoms. Mioduszewski's pain-management providers repeatedly reported that he received "significant functional and symptomatic benefit from current treatment." R. 24. Although improvement alone does not establish an ability to work, the ALJ did not draw that inference. The significance of those reports did not lie in the bare fact that treatment helped. Rather, the providers repeatedly described the benefit as both symptomatic and *functional*, and the ALJ considered that reported functional benefit alongside examinations showing that Mioduszewski could sit comfortably, rise independently, and walk with a normal gait. Taken together, that evidence reasonably bore on whether his pain produced the degree of functional incapacity he alleged.

Mioduszewski separately challenges the ALJ's characterization of his treatment as "conservative." He argues that medication, physical therapy, and self-care are ordinary treatments for fibromyalgia and that the ALJ identified no more aggressive treatment that was available or appropriate. The court need not decide whether the ALJ permissibly relied on the conservative nature of Mioduszewski's treatment. Even if that rationale is set aside, the ALJ supported his symptom evaluation with other reasons, including Mioduszewski's longitudinal functional findings and his providers' repeated reports of significant functional and symptomatic benefit from treatment. Those reasons provide sufficient support for the ALJ's decision not to credit the disabling limitations Mioduszewski alleged. *See Tutwiler v. Kijakazi*, 87 F.4th 853, 859 (7th Cir. 2023) (upholding a symptom evaluation despite possible error as to some factors because enough of the remaining factors were adequately supported).

Mioduszewski's remaining objections concern evidence that the ALJ allegedly failed to discuss separately, including his opioid medication, other pain-management measures, and limited daily activities. Those considerations may bear on a claimant's symptoms, but an ALJ need not discuss every regulatory factor or piece of evidence individually. *See Grotts*, 27 F.4th at 1277. And the ALJ did not overlook the substance of that evidence. He acknowledged Mioduszewski's medication regimen and treatment history, his efforts to manage his symptoms, and his limited daily activities, including that he sometimes helped with light household tasks and walked his dogs on better days. R. 21–24.

Nor was the ALJ required to credit Mioduszewski's bad days as work-preclusive absences. The vocational expert testified that missing as little as one day every other month would eliminate competitive work. Still, the only evidence quantifying absences at that rate came from the opinions of Stoddard and Dr. Zoeller, which the ALJ permissibly discounted

for the reasons outlined in Part I. Having acknowledged the bad-day testimony, the ALJ did not need to accept a work-preclusive absence rate supported only by those unpersuasive opinions.

The ALJ's explanation was not exhaustive, but I can trace his reasoning: he accepted that Mioduszewski experienced significant pain, accounted for that pain in the RFC, and relied on longitudinal functional findings and treatment response in declining to accept the alleged disabling degree of limitation. Under the deferential "patently wrong" standard, that is enough.

## CONCLUSION

In sum, the ALJ adequately explained his evaluation of the medical opinions, supported the RFC with substantial evidence, and did not commit reversible error in evaluating Mioduszewski's subjective symptoms. Accordingly, I **AFFIRM** the Commissioner's final decision and **DENY** Mioduszewski's request for remand. The clerk of court shall enter judgment accordingly.

**SO ORDERED** this 1st day of September, 2026.

Stephen C. Dries

STEPHEN C. DRIES
United States Magistrate Judge